Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000173
27-AUG-2013
07:58 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee, v.
LAWRENCE DEMELLO, JR., Defendant-Appellant

NO. CAAP-10-0000173

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(Case No. 2P108-02074)

AUGUST 27, 2013

FOLEY, PRESIDING JUDGE, FUJISE AND REIFURTH, JJ.

OPINION OF THE COURT BY FUJISE, J.

Defendant-Appellant Lawrence DeMello, Jr. (DeMello) appeals from the January 5, 2010 Judgment entered by the District Court of the Second Circuit, Wailuku Division (District Court).[1] DeMello was found guilty of Harassment, in violation of Hawaii

---

[1] The Honorable Kelsey T. Kawano presided.

Revised Statutes (HRS) § 711-1106(1)(a) (Supp. 2012)[2] and Simple Trespass, a violation of HRS § 708-815 (1993).[3]

DeMello's points on appeal are that (1) there was insufficient evidence to convict him of Harassment, (2) his sentence was illegal because the District Court imposed the maximum 30-day term of incarceration and ordered him to attend anger management classes for his Harassment conviction, (3) the District Court abused its discretion by ordering him to pay restitution because (a) the District Court failed to apportion restitution for the victim's medical expenses based on the victim's pre-existing medical condition and because it was not clear that DeMello was the sole cause of the victim's injuries, (b) restitution for lost wages is not permitted by HRS § 706-646, and (c) the evidence in the record did not support the amount of restitution DeMello was ordered to pay, and (4) the District Court failed to enter findings of fact and conclusions of law regarding the manner of restitution payment and the amount that DeMello could reasonably afford to pay.

## I. Background

On July 5, 2008, DeMello was charged with Harassment of Carleen Kelekoma (Carleen) and Simple Trespass upon the premises owned by Carleen. DeMello's one-day, non-jury trial was held on December 14, 2009.

Alex Kelekoma (Alex), testified that he was married to Carleen and lived with his two children, a son, from a previous marriage to Cherilyn Kelekoma (Cherilyn) and a daughter with Carleen. At the time of the events in this case, DeMello was Cherilyn's boyfriend and son's football coach. Alex was the equipment manager for the same team.

---

[2] HRS § 711-1106(1)(a) provides: "A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person: Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]" (formatting changed).

[3] DeMello does not challenge his Simple Trespass violation on appeal.

Alex and Cherilyn had agreed that, after school on certain days, son would catch the bus from school to the Kelekoma home. On May 9, 2008, son failed to get off the bus at his regular time; Alex became worried and called Cherilyn. Cherilyn informed Alex that DeMello had picked son up from school.

The next day, Alex told Carleen about the incident. Later that evening, Alex called DeMello and told him that he did not appreciate what happened and that he should have been informed that DeMello would pick son up. DeMello said, "Oh yeah, I went and picked him up from school because we didn't trust him going to your house because your wife took away the cell phone." Both Alex and DeMello were calm; neither raised their voice.

Carleen took the phone from Alex and also spoke to DeMello because she believed that DeMello was overstepping his boundaries. According to Alex, Carleen was not "yelling or making derogatory comments or anything," but from a two-to-three-foot distance, Alex could hear DeMello yelling, although he could not hear what was being said. Carleen told DeMello, "Calm down, brother, calm down." Carleen told Alex that DeMello hung up on her.

About a minute later, Cherilyn called Alex's phone and Carleen answered it. Carleen told Cherilyn, "I didn't do anything to him." Five to ten minutes later, Alex saw DeMello pacing back and forth in front of Alex's yard, next to the fence. Alex waived DeMello over; DeMello jumped over the fence instead of using the gate. DeMello came up "pretty fast" and "had a really angry posture[.]" Alex testified that DeMello immediately went up to Carleen with his hand raised, as if he were threatening to hit her, saying, "you don't know who you are messing with, don't talk to me like that[.]" DeMello was toe-to-toe with Carleen. Carleen took a step back and was shocked. Alex stood between them and told DeMello to calm down. Carleen asked DeMello, "What? You going to hit me L.D.?" DeMello responded, "I not going to hit you, but you better watch who you

3

are talking to." Nevertheless, DeMello still had "his backhand raised." Carleen told DeMello to leave.

Carleen continued to converse with DeMello, and Cherilyn arrived about five minutes after DeMello did. Cherilyn also appeared angry and immediately approached Carleen, saying, "What's your problem, you know? What did you do?" The conversation then became more heated. Carleen was backing up and Cherilyn was gradually getting closer as the argument progressed, until "she finally went for Carleen." Alex immediately got between the women and, facing Carleen, pinned her back against their clothesline. As Cherilyn tried to go over Alex's shoulder towards Carleen, Alex picked Carleen up and started walking off the patio towards the yard. Cherilyn came over Alex's back, causing all three to fall across the lawn. Alex then saw DeMello, using both hands, grab Carleen's hair on either side of her head and drag her across the lawn about 10 feet, with enough force to lift her legs off the ground. Alex immediately got up and shoved DeMello away. DeMello started yelling at Alex, telling him, "Don't put your hands on me. You know, like I will knock you out." Alex told DeMello, "Brother, I am just protecting my wife." When DeMello continued to threaten Alex, Alex told DeMello, "You know what, Brother, you guys got to go. Leave already." However, DeMello and Cherilyn did not leave and DeMello "was bouncing around like with his hands up, you know, like he wanted to fight."

Carleen testified that after she fell on the lawn with Alex and Cherilyn, she "felt excruciating pain on both sides . . . left and right, like my hair was [being] pulled" and then "felt [her] neck crunch back and [] heard it crack and then black." After she awoke, Carleen saw that she was ten feet away, under her lemon tree, felt excruciating pain on her head and neck, had a hard time breathing, and was dizzy. She then told DeMello and Cherilyn to get off her property but they did not immediately leave. When Carleen repeated that DeMello and Cherilyn should go, Cherilyn responded, "I can't stop him, you

can't stop him, nobody can, so get out of the way or you are going to get hurt." At that point, Carleen went into the house to call the police. Aggravated, Cherilyn said, "You know what, call the cops. I will take your asses to court and I'll take my son away and you know they will give him to me because I am the mother."

About five minutes after they were called, the police arrived; DeMello was still engaged in yelling at the Kelekomas and did not notice their arrival until one of the officers tapped him on his shoulder. DeMello left the property without being arrested but was later served a summons and complaint for Harassment and Simple Trespass.

Cherilyn and DeMello described the incident somewhat differently. Cherilyn claimed that Carleen attacked her first and attacked her again after Alex intervened. It was DeMello that told Carleen to let go of Cherilyn's hair. After Cherilyn, Carleen, and Alex fell on the ground Cherilyn believed that DeMello grabbed Carleen's hair to make her let go of her own hair but did not actually see DeMello grab Carleen's hair. In response to Alex's inquiry as to why DeMello did that to Carleen, DeMello stated that he was defending Cherilyn. Cherilyn denied that Carleen or Alex asked her or DeMello to leave the premises.

DeMello testified that Alex invited him onto the property so he jumped over the fence as he had done on previous occasions. DeMello claimed that Carleen came up to him aggressively and invaded his "comfort zone" so he put up both of his hands. He explained that he tried to calm Carleen down. Carleen calmed down but then began to argue with Cherilyn after she arrived. Alex was holding Carleen back and he was holding Cherilyn back when Carleen reached over and grabbed Cherilyn's hair. According to DeMello, only Carleen and Cherilyn fell down while Alex went off to a corner. He tried to grab Carleen's hand but he got tangled in Carleen's hair because she was pulling and punching. He told Carleen to let go. DeMello admitted to

pulling Carleen's hair but only because he was attempting to protect Cherilyn.

The District Court found DeMello guilty as charged and specifically rejected his defense-of-others justification under HRS § 703-305 (1993).

> Under the circumstances, neither Cherilyn nor the defendant would have been justified in using the kind of force that was used in this case, to wit, the pulling of the defendant by the hair across the lawn for that distance. Under the circumstances, this conduct was not necessary to achieve the protection of the other person.
>
> The facts in this case indicate that at the time of defendant's conduct in pulling the defendant [sic] by her hair across the lawn, that Cherilyn was already the aggressor in this altercation, Carleen was already on her back with her husband lying on top of her, and Cherilyn on top of this pile. And, therefore, the facts and circumstances of this case do not allow this Court to contemplate this defense of the use of force for the protection of other persons, which is rejected.

For his Harassment conviction, DeMello was sentenced to 30 days incarceration and was ordered to participate in anger management classes. DeMello was fined $100 for Simple Trespass. On request of the State, a hearing to determine restitution was set for March 30, 2010. Judgment dated January 5, 2010, noted a 30 day jail term, participation in anger management class, a $100 fine, and that "deft to sign a free standing order of restitution granted." DeMello filed a Notice of Appeal on February 2, 2010. At the status conference held on February 8, 2010, the District Court noted that DeMello had filed his notice of appeal and entered a stay of sentence pending the appeal.

On March 8, 2010, Carleen's claim for restitution was filed, claiming $2051.27 in medical costs and $1,155.12 in lost wages. Attached to the claim was a detailed breakdown of medical and therapeutic services received by Carleen and a list of Carleen's clients with the respective fees she would have earned, between May 13, and May 23, 2008. In addition, letters from Carleen's treating physician and therapists attesting that the charges indicated were for treatment of Carleen for injuries sustained on May 10, 2008. At the March 30, 2010 hearing, the

District Court continued the proceedings pending the resolution of DeMello's appeal.

On May 4, 2010, this court dismissed DeMello's appeal for lack of jurisdiction because the judgment did not contain the amount of restitution determined by the District Court.

On August 2 and September 20, 2010, the District Court held a hearing to determine the amount of restitution (restitution hearing). During the restitution hearing, Carleen admitted that she had a pre-existing neck injury from a dirt bike accident ten years prior. However, Carleen claimed that she was dragged by her hair ten feet, lifted off the ground, knocked out, had hair ripped out of her head, had bruising on her shoulder, and a cut on her back from the incident on May 9, 2008. Carleen testified about the amount of co-payments she paid for medical services that were not reimbursed by insurance. She stated that she reviewed cancelled checks for each of the medical bills she testified about. However, the District Court sustained DeMello's foundation objection to the admission of documents regarding Carleen's medical expenses. Carleen testified that her visits to medical providers was due to the incident involving DeMello. Carleen stated that the reason she sought medical treatment was for neck pain from the incident but also admitted that she was being treated for neck pain prior to the incident. Prior to the incident, her neck pain did not keep her in bed. She knew the visits after the incident stemmed from the incident because the pain was a lot worse. After the incident, Carleen stated that the pain was so bad that she could not get out of bed. Prior to the incident, on a scale of one to ten with ten being the worst, Carleen indicated that most days it was between two and six. After the incident, she rated the pain level at a ten for about fourteen days.

Carleen testified that she is a hairdresser who rents a chair in a salon for a flat fee, manages her own clients and money, and does not earn any money if she does not have any clients. The parties stipulated that the names on Carleen's

7

business ledger that were scratched out represented lost income that totaled $1,155.12.

DeMello argued that the amount of restitution should be apportioned because Carleen had a pre-existing neck injury which was being treated at the time of the incident. DeMello also argued that responsibility should be apportioned due to three altercations between Carleen and Cherilyn on the same night which also involved hair pulling. DeMello also contended that HRS § 706-646 did not allow restitution for lost wages. Finally, DeMello argued that Carleen's testimony as to her medical records was not credible.

On October 25, 2010, the District Court entered an "Order on Restitution Hearing" which stated in relevant part:

Findings of Fact:

1.    Karlene Kelikoma [sic], the victim of the offense of harassment committed against her by the Defendant on May 10, 2009, (hereinafter "the incident") is claiming restitution for medical expenses incurred to treat injuries sustained in the incident and for lost income resulting from the Victim being unable to work as a result of the incident.

2.    In the course of the incident, the Defendant grabbed the Victim by her hair and dragged her by her hair for a distance of about 10 feet. The Victim experienced a sensation that her neck cracked. She felt immediate excruciating pain and then she "blacked out". Subsequent symptoms included dizziness, pain in the back of her skull, shooting pain in her neck and shoulder area, tingling feet, and headache. The Victim sustained a cut to the back of her left shoulder, and bruises on her body and arms. Hair was ripped out of her head.

3.    Another person involved in the incident, Sherelyn Kelikoma [sic], also assaulted the Victim by punching the Victim and pulling her hair but there is no evidence upon which this court may attribute any of the Victim's losses to Sherelyn Kelikoma [sic].

4.    As a direct result of the incident, the Victim required medical treatment and was unable to engage in normal employment activity as a self employed hairdresser. The direct losses consisting of medical expenses and loss of gross receipts are as follows:

| | |
|---|---|
| Maui Medical Group | $ 141 |
| Dr. Kenneth Kaan | 55 |
| Dr. Jeffrey Wang | 212 |
| Dr. Mirzi/Dr. Nagasaka | 519 |
| Maui Physical Therapy | 351 |
| Integrative Physical Therapy | 429 |

```
Dr. Jeffrey Chester              525
                                $2,232
Gross Receipts                  $1,155
TOTAL                           $3,387
```

5.      At the time of the incident, Victim suffered from pre-existing impairment of her cervical spine consisting of a bulged disk at C-5 level.  This condition resulted from a dirt bike accident which occurred about 10 years prior to the incident.  The injury was symptomatic at the time of the incident.  The victim was undergoing medical treatment for the pre-existing condition at the time of the incident.  The incident significantly worsened the Victim's pre-existing condition at the time of the incident.  The incident significantly worsened the Victim's pre-existing symptomology and precipitated a new, more intensive course of medical treatment.

6.      No medical expert opinion or other competent medical evidence was adduced by either party on the issue of apportionment.

7.      The total amount of direct medical expenses resulting from the incident is based upon the testimony of the Victim that said losses are a direct consequence of the incident and which are her out of pocket loss for which she will not be compensated or reimbursed by her medical insurance.  The Court finds the Victim's testimony credible.

. . . .

Conclusions of Law:

. . . .

3.      Restitution is a quasi-civil sanction.  State v. Tuialii, 121 Haw. 135 (Haw. App. 2009).  Accordingly, the Court determines the rule of apportionment of personal injury damages in civil actions is appropriate.  In the instant case, where the Victim had a pre-existing condition at the time of the incident, where the evidence indicates that a significant worsening of the pre-existing condition was caused by the Defendant, where there is no expert medical opinion or other competent medical evidence upon which an apportionment can be made, then the Defendant is liable for the entire amount of the damages or losses incurred as a direct result of the incident.  Kawamoto v. Yasutake, 49[] Haw. 42 (1966); Matsumoto v. Kaku, 52 Haw. 629 (1971).

4.      Defendant is ordered to pay the Victim restitution in the amount of $3,387.  Restitution shall be paid at a de minimus [sic] rate of $20 per month on the first of each month commencing November 01, 2010 until restitution is fully paid.  Defendant shall sign a free standing order of restitution.

DeMello filed a Notice of Appeal on November 23, 2010.

## II. Discussion

A. Justification Defense

DeMello contends that there was insufficient evidence to convict him of Harassment because the State failed to prove, beyond a reasonable doubt, facts negating his defense-of-others justification defense pursuant to HRS § 703-305 (1993). DeMello admitted to grabbing Carleen's hair but testified he did so only because Carleen was attacking Cherilyn. The District Court did not credit DeMello's testimony that he grabbed Carleen to protect Cherilyn. "The prosecution disproves a justification defense beyond a reasonable doubt when the trial court believes the prosecution's case and disbelieves the defendant's case." State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996) (prerogative of the trier of fact to believe defendant when he admitted to stabbing and to disbelieve him when he asserted that he was merely trying to protect his brother).

Here, the District Court found that by the time DeMello dragged Carleen by her hair, Cherilyn was already the aggressor. Alex testified that Cherilyn "went for" Carleen before DeMello pulled Carleen by her hair. Thus, the District Court's finding that DeMello was not acting to protect Cherilyn was supported by the evidence. As there was evidence in support of the District Court's findings, we will not second-guess them. "Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings." State v. Sua, 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (brackets omitted) (quoting State v. Staley, 91 Hawai'i 275, 281-82, 982 P.2d 904, 910-11 (1999)).

B. Illegal Sentence of Maximum Incarceration and Anger Management Class

DeMello contends that his sentence is illegal because, in addition to being sentenced to the maximum 30-day jail term for a petty misdemeanor, he was also ordered to attend anger management classes. The State concedes that the District Court

10

erred by sentencing DeMello to both the thirty-day term of imprisonment and anger management classes for his Harassment conviction.  We agree.

Sentencing options are governed by HRS § 706-605(1) (Supp. 2012).[4]  Harassment is a petty misdemeanor for which

---

[4]           §706-605  Authorized disposition of convicted defendants.  (1)  Except as provided in parts II and IV or in section 706-647 and subsections (2), (6), and (7), and subject to the applicable provisions of this Code, the court may sentence a convicted defendant to one or more of the following dispositions:

  (a)   To be placed on probation as authorized by part II;

  (b)   To pay a fine as authorized by part III and section 706-624;

  (c)   To be imprisoned for a term as authorized by part IV; or

  (d)   To perform services for the community under the supervision of a governmental agency or benevolent or charitable organization or other community service group or appropriate supervisor; provided that the convicted person who performs such services shall not be deemed to be an employee of the governmental agency or assigned work site for any purpose.  All persons sentenced to perform community service shall be screened and assessed for appropriate placement by a governmental agency coordinating public service work placement as a condition of sentence.

       (2)   The court shall not sentence a defendant to probation and imprisonment except as authorized by part II.

       (3)   In addition to any disposition authorized in subsection (1), the court may sentence a person convicted of a misdemeanor or petty misdemeanor to a suspended sentence.

       (4)   The court may sentence a person who has been convicted of a violation to any disposition authorized in subsection (1) except imprisonment.

       (5)   The court shall sentence a corporation or unincorporated association that has been convicted of an offense in accordance with section 706-608.

       (6)   The court shall impose a compensation fee upon every person convicted of a criminal offense pursuant to section 351-62.6; provided that the court shall waive the imposition of a compensation fee if it finds that the defendant is unable to pay the compensation fee.  When a defendant is ordered to make payments in addition to the

(continued...)

the maximum term of imprisonment is thirty days. HRS §§ 711-1106(2) and 706-663 (1993). There is no provision in HRS § 706-605 for the imposition of anger management or other treatment programs. Id. However, HRS § 706-624(2)(j)[5] does authorize the imposition of, *inter alia*, mental health treatment, as a discretionary term of probation. Therefore, DeMello could have been sentenced to a thirty-day term of incarceration or a six-

---

[4](...continued)
compensation fee, payments by the defendant shall be made in the following order of priority:

>(a) Restitution;

>(b) Crime victim compensation fee;

>(c) Probation services fee;

>(d) Other fees; and

>(e) Fines.

>(7) The court shall order the defendant to make restitution for losses as provided in section 706-646. In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.

>(8) This chapter does not deprive the court of any authority conferred by law to decree a forfeiture of property, suspend or cancel a license, remove a person from office, or impose any other civil penalty. Such a judgment or order may be included in the sentence.

[5] HRS §706-624(2)(j) as amended in 2006, provides,

The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706-606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706-606(2), that the defendant:

>. . . .

>(j) Undergo available medical or mental health treatment, including treatment for substance abuse dependency, and remain in a specified facility if required for that purpose[.]

HRS §706-624(2)(q) also authorizes the court to impose "other reasonable conditions."

month[6] term of probation, but not both.  HRS § 706-605(2).
Therefore, DeMello's sentence was illegal.

C.   Restitution

DeMello also raises a number of challenges to the
District Court's award of restitution.  He argues that the
District Court abused its discretion by ordering restitution
because (1) he was not the sole cause of Carleen's injuries;
(2) lost wages are not compensable under HRS § 706-646; (3) no
apportionment between Carleen's pre-existing neck injury and the
injury he caused was made; and (4) there was insufficient
evidence of Carleen's medical expenses and lost wages.

Relevant to these issues, HRS § 706-646(2) and (3)
(Supp. 2012), provide:

> (2)  The court shall order the defendant to make
> restitution for reasonable and verified losses suffered by
> the victim or victims as a result of the defendant's offense
> when requested by the victim.  The court shall order
> restitution to be paid to the crime victim compensation
> commission in the event that the victim has been given an
> award for compensation under chapter 351.  If the court
> orders payment of a fine in addition to restitution or a
> compensation fee, or both, the payment of restitution and
> compensation fee shall have priority over the payment of the
> fine, and payment of restitution shall have priority over
> payment of a compensation fee.

> (3)  In ordering restitution, the court shall not
> consider the defendant's financial ability to make
> restitution in determining the amount of restitution to
> order.  The court, however, shall consider the defendant's
> financial ability to make restitution for the purpose of
> establishing the time and manner of payment.  The court
> shall specify the time and manner in which restitution is to
> be paid.  Restitution shall be a dollar amount that is
> sufficient to reimburse any victim fully for losses,
> including but not limited to:

---

[6]     HRS § 706-623(1)(d) (Supp. 2012) provides,

(1)   When the court has sentenced a defendant to be placed
on probation, the period of probation shall be as follows,
unless the court enters the reason therefor on the record
and sentences the defendant to a shorter period of
probation:

. . . .

(d)    Six months upon conviction of a petty
misdemeanor; provided that up to one year may be
imposed upon a finding of good cause.

(a)     Full value of stolen or damaged property, as
        determined by replacement costs of like
        property, or the actual or estimated cost of
        repair, if repair is possible;

(b)     Medical expenses; and

(c)     Funeral and burial expenses incurred as a
        result of the crime.

In the plain language of HRS § 706-646(2), restitution (a) shall be ordered when requested by the victim (b) for reasonable and verified losses (c) caused by the defendant. Review of the trial court's decision to impose restitution is for an abuse of discretion. State v. Mundon, 121 Hawaiʻi 339, 349, 219 P.3d 1126, 1136 (2009).

1.    Division of Liability for Losses Suffered as a
      Result of Defendant's Offense

DeMello argues that the District Court "should have made a reasonable attempt to apportion the restitution award because it was clear that [DeMello] was not the sole cause of Carleen's injuries."

"[U]nder HRS § 706-646, a defendant cannot be ordered to pay restitution unless he caused a victim's losses." State v. Domingo, 121 Hawaiʻi 191, 194, 216 P.3d 117, 120 (App. 2009). However, the District Court found that "there is no evidence upon which this court may attribute any of [Carleen's] losses to [Cherilyn]." While it is undisputed that Carleen and Cherilyn engaged in scuffles with each other and at some point Cherilyn pulled Carleen's hair, there was no evidence that anything Cherilyn did resulted in the losses Carleen suffered. Therefore, the District Court's finding that DeMello was the sole cause of Carleen's losses was supported by the evidence. Consequently, it was not error to conclude DeMello was liable for Carleen's compensable losses.

2.    Restitution For Wage Loss

DeMello contends that as a matter of law, lost wages may not be awarded as restitution under HRS § 706-646(3). We agree that restitution for wage loss is contrary to the

14

legislative intent behind HRS § 706-646. Therefore, the District Court erred by ordering DeMello to pay restitution of $1,155 for wage loss.

There is no explicit provision in HRS §706-646 for the award of lost wages as part of restitution. When this statute was originally proposed in 1998, House Bill (HB) 2776, stated, in pertinent part:

> SECTION 1. Chapter 706, Hawaii Revised Statutes, is amended by adding to part III a new section to be appropriately designated and to read as follows:
>
> . . . .
>
> (3) Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses including but not limited to:
>
> (a) Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
>
> (b) Medical expenses;
>
> (c) Wage loss incurred by the victim;
>
> (d) Funeral and burial expenses incurred as a result of the crime; and
>
> (e) Cost of therapeutic treatment required by the victim to recover from the psychological and emotional effects of the offense.

Relevant to the issue of lost wages, House Standing Committee Report 683-98 on HB 2776, stated,

> [A]llowing restitution for therapy and wage loss presents difficulty because these costs are often immeasurable. While the value of stolen or damaged property, medical expenses, and funeral and burial expenses can be determined with specificity, costs of therapy, which can last for months or years after the defendant is sentenced, are not. Also, wage loss may be measurable if the victim has an occupation at the time of the offense, but it becomes difficult to determine if the victim is unemployed at the time. Your Committee finds that this remedy is more appropriate for the civil arena.
>
> . . . .
>
> Accordingly, your Committee has amended this bill by:
>
> . . . .
>
> (2) Not allowing for reimbursement of wage loss incurred by the victim and cost of therapeutic

> treatment required by the victim to recover from
> the psychological and emotional effects of the
> offense in the restitution order[.]

H. Stand. Comm. Rep. No. 683-98, reprinted in 1998 House Journal, at 1305-06 (emphasis added). Subsequently, no reinsertion or mention of lost wages was made by the Senate. We infer from this inaction that the Senate was in agreement with this determination by the House of Representatives. See S. Stand. Comm. Rep. No. 2921, reprinted in 1998 Senate Journal at 1190-91. Furthermore, although this statute has been amended many times since 1998, the Legislature has not seen fit to include lost wages. HRS § 706-646 (Supp. 2012)

We therefore conclude that lost wages are not compensable as restitution.

3. Apportionment Due to Pre-existing Injury

DeMello next argues that Carleen's pre-existing neck condition should reduce the amount of loss he is responsible for paying. Based on the District Court's restitution decision, it appears that it agreed that apportionment should be considered. Thus, it appears that DeMello's argument is with the manner in which the District Court applied this concept.

We know that restitution is limited to "reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense[.]" HRS § 706-646(2) (emphasis added). This requires a nexus between the defendant's conduct and the victim's injuries. Domingo, 121 Hawai'i at 194, 216 P.3d at 120 ("Absent evidence that Domingo's conduct caused or aggravated Tomlin's injuries or caused Tomlin's death, no causal relationship between Domingo's criminal act and a victim's losses is shown and restitution may not be imposed pursuant to HRS § 706-646."). It follows that, where there is more than one possible cause for the loss, the court must determine whether the evidence supports the finding that the defendant's conduct caused or contributed to the victim's loss. Id.; see also State v. Gibson, 160 N.H. 445, 449, 999 A.2d 240, 243 (2010) and

Commonwealth v. Balisteri, 329 Pa. Super. 148, 155, 478 A.2d 5, 9 (1984).

Here, the District Court found that the "incident significantly worsened [Carleen's] pre-existing symptomology and precipitated a new, more intensive course of medical treatment," found credible the testimony of Carleen that the contested medical expenses were "a direct consequence of the incident" and concluded that a "significant worsening of the pre-existing condition was caused by" DeMello. Thus, the District Court seemed to have found there was a basis in the evidence to conclude DeMello caused injury and resultant expenses, while recognizing that the victim had been previously suffering from an injury and receiving treatment therefor.

Nevertheless, the District Court appeared to rule no apportionment was possible where "no expert medical opinion or other competent medical evidence" was presented. This conclusion appears to be at odds with the court's findings regarding the worsening of the victim's condition and consequential change in her medical treatment and based on a misconception that imposition of all medical expenses could be made on a defendant where there was insufficient evidence upon which to base an apportionment.

Because we know of no requirement that medical or other expert testimony must be presented in order to make an apportionment, we vacate the remaining restitution award for medical expenses and remand for an evidentiary hearing, if necessary.

D.    Sufficient Evidence Of Losses

Finally, DeMello contends that there was insufficient evidence of Carleen's losses, arguing that the State failed to provide verification of medical expenses because there were no medical invoices admitted into evidence and "Carleen's testimony alone was insufficient verification of Carleen's alleged losses." While we have vacated the restitution award for other reasons, we provide the following discussion to assist the court on remand.

17

In the restitution context, the burden of proof and the party bearing it have not been determined in this jurisdiction. The Hawai'i Supreme Court has recognized that "restitution is "quasi-civil" in nature because it is designed to compensate the victim as an adjunct of punishment." State v. Feliciano, 103 Hawai'i 269, 272, 81 P.3d 1184, 1187 (2003) (citing State v. Gaylord, 78 Hawai'i 127, 152, 890 P.2d 1167, 1193 (1995)). The legislative history underlying the restitution statute makes clear that the Legislature's intent was to provide a more expedient method for victim compensation in conjunction with other civil remedies:

> This bill allows victims of crime to enforce a criminal restitution order in the same manner as a civil judgment. Under current law, the court may require a defendant to pay restitution for the losses caused to the victim. Collection of this restitution is left to governmental entities like the Judiciary, Public Safety, and Paroling Authority, which often are able to collect only a small fraction of the amount.

> There are few other options. Although the Criminal Injuries Compensation Commission helps victims by providing some compensation, victims of property crimes and some violent crimes are not eligible for any compensation from the Commission. And although a victim may bring a civil action against the defendant, this process is costly and time consuming.

> Therefore, your Committee believes that victims should have a "fast track" ability to be compensated for their losses by allowing them to enforce the criminal restitution order as a civil judgment, using all of the civil collection remedies.

Stand. Comm. Rpt. 683-98 reprinted in 1998 House Journal at 1305. Generally speaking, in civil cases the burden of proof is by a preponderance of the evidence. Iddings v. Mee-Lee, 82 Hawai'i 1, 13, 919 P.2d 263, 275 (1996).

Many jurisdictions have adopted a preponderance of the evidence standard in restitution proceedings. In re William L., 211 Ariz. 236, 238, 119 P.3d 1039, 1041 (2005); People v. Keichler, 129 Cal. App. 4th 1039, 1045, 29 Cal. Rptr. 3d 120, 124 (2005); People v. Carpenter, 885 P.2d 334, 336 (Colo. App. 1994) ("[A] preponderance of the evidence is a sufficient and proper burden of persuasion in proceeding to establish restitution in

criminal cases. This is the burden required under federal law to establish both the causal connection between the offense and the loss and the amount of the loss."); <u>Winborn v. State</u>, 625 So.2d 977, 977 (Fla. Dist. Ct. App. 1993); <u>Lawrenz v. State</u>, 194 Ga. App. 724, 724, 391 S.E.2d 703, 704 (1990); <u>Commonwealth v. Palmer</u>, 61 Mass. App. Ct. 230, 233, 808 N.E.2d 848, 850 (2004); <u>State v. Kleppe</u>, 800 N.W.2d 311, 319 (N.D. 2011); <u>McCullough v. Commonwealth</u>, 38 Va. App. 811, 816-17, 568 S.E.2d 449, 451 (2002). <u>See also</u>, 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King and Orin S. Kerr, <u>Criminal Procedure</u>, § 26.6(c) at 825-26 (3rd ed. 2007) ("<u>Criminal Procedure</u>").

> In <u>People v. Carpenter</u>, *supra*, the court stated:

> Defendant has not cited, nor are we aware of, any cases from other jurisdictions establishing a burden of persuasion higher than preponderance of the evidence with respect to restitution in criminal proceedings.

> We conclude that a preponderance of the evidence is a sufficient and proper burden of persuasion in proceedings to establish restitution in criminal cases. This is the burden required under federal law to establish both the causal connection between the offense and the loss and the amount of the loss. 18 U.S.C. § 3664(d) (1988); <u>see</u> <u>United States v. Diamond</u>, 969 F.2d 961 (10th Cir. 1992). We see no reason why the burden in our courts should be higher. . . . Further, restitution in a criminal proceeding is in lieu of, or in addition to, a civil judgment, and we see no reason why the burden of persuasion should be any higher here than there. <u>See</u> § 13-25-127(1), C.R.S. (1987 Repl. Vol. 6A).

<u>Carpenter</u>, 885 P.2d at 336-37. Although it is nearly twenty years since the <u>Carpenter</u> decision, we are also unable to find any case imposing a burden higher than the preponderance of the evidence standard in a restitution proceeding.

Given the Legislature's intent that the restitution process serve as an expedited alternative to a civil lawsuit, we agree with the multitude of other states deciding the matter and adopt a preponderance of the evidence standard in restitution proceedings in Hawai'i.

However, neither our restitution statute nor Hawai'i case law designate who bears the burden of proof in restitution proceedings. Other jurisdictions have taken the position that,

"[t]he State has the burden of establishing by a preponderance of the evidence a causal connection between the restitution requested and the crime with which the defendant is charged," State v. Kinneman, 122 Wash. App. 850, 860, 95 P.3d 1277, 1283 (2004). See also United States v. Polichemi, 219 F.3d 698, 714 (7th Cir. 2000) (based on 18 United States Code (USC) § 3664), People v. Lassek, 122 P.3d 1029, 1034 (Colo. App. 2005); Winborn, 625 So.2d at 977; Palmer, 61 Mass. App. Ct. at 233, 808 N.E.2d at 850; Kleppe, 800 N.W.2d at 319; State v. Shannon, 155 N.H. 135, 139, 920 A.2d 1163, 1166 (2007); Criminal Procedure, § 26.6(c) at 825.

In light of the Hawai'i statute's requirement that the restitution amount be "reasonable and verified" and that the victim is in the best position to provide information regarding and verification of his or her losses caused by the defendant, we conclude that, where restitution is contested, the burden to present a prima facie showing that the restitution request is best placed on the prosecution who brings the restitution motion on behalf of the victim of the crime.

If, on the other hand, the defendant wishes to contest the amounts requested by the victim, the onus is on the defendant to come forward with evidence to support his or her challenge. We start with the basic premise that the Legislature has made clear that the restitution award "shall be a dollar amount that is sufficient to reimburse any victim fully for losses." HRS § 706-646(3).

In People v. Fulton, 109 Cal. App. 4th 876, 135 Cal. Rptr. 2d 466 (2003), Fulton appealed a restitution award on the basis that it improperly included some attorney's fees which were not recoverable. 109 Cal. App.4th at 879, 135 Cal. Rptr. 2d at 469. The parties in Fulton disputed the evidentiary burden in restitution hearings. Id. at 885, 135 Cal. Rptr. 2d at 474. In resolving the evidentiary burden issue, the Fulton court stated:

> At the core of the victim restitution statutory scheme
> is the mandate that a victim who suffers economic loss is
> entitled to restitution and that the restitution is to be

"based on the amount of loss claimed by the victim." Thus, a victim seeking restitution (or someone on his or her behalf) initiates the process by identifying the type of loss (§ 1202.4, subd. (f)(3)) he or she has sustained and its monetary value. Where the restitution claimed is attorney fees, this requirement is met when the record contains prima facie evidence of reasonable attorney fees incurred by the victim to recover the economic losses. (Cf. In re S.S. (1995) 37 Cal. App. 4th 543, 546-547, 43 Cal. Rptr. 2d 768; People v. Scroggins (1987) 191 Cal. App. 3d 502, 508, 236 Cal. Rptr. 569; People v. Hartley (1984) 163 Cal. App. 3d 126, 130, fn. 3, 209 Cal. Rptr. 131; see also Evid. Code, § 500.)

Once the record contains evidence showing the victim suffered economic losses and incurred reasonable attorney fees to recover those losses, this showing establishes the amount of restitution the victim is entitled to receive, unless challenged by the defendant. In that event, the burden shifts to the defendant to show the portion of the attorney fees that are not recoverable because those fees can be attributed solely to a nonrecoverable category of noneconomic losses. (See People v. Foster (1993) 14 Cal. App. 4th 939, 946, 18 Cal. Rptr. 2d 1; People v. Baumann (1985) 176 Cal. App. 3d 67, 80-82, 222 Cal. Rptr. 32; People v. Hartley, supra, 163 Cal. App. 3d at p. 130, 209 Cal. Rptr. 131.) This approach complies with the statutory mandate that the amount of restitution is to be based on the "loss claimed by the victim" and the designated right of the defendant to a hearing "to dispute the determination of the amount of restitution."

We disagree with the assertion by Fulton and amicus curiae Appellate Defenders, Inc., that due process precludes placing the burden of proof on the defendant to show the attorney fees were incurred solely to recover noneconomic losses. Due process requires that the prosecution prove beyond a reasonable doubt all of the elements of the charged offenses. (People v. Babbitt (1988) 45 Cal. 3d 660, 692, 248 Cal. Rptr. 69, 755 P.2d 253.) However, when the defense raises factual issues collateral to the question of the accused's guilt or innocence, there is no constitutional impediment to requiring the accused to prove these collateral facts by a preponderance of the evidence. Id. at pp. 693-694, 248 Cal. Rptr. 69, 755 P.2d 253; People v. Frye (1998) 18 Cal. 4th 894, 967-969, 77 Cal. Rptr. 2d 25, 959 P.2d 183; see also People v. Allen (1999) 21 Cal. 4th 424, 435-436, 87 Cal. Rptr. 2d 682, 981 P.2d 525; People v. Hawthorne (1992) 4 Cal. 4th 43, 79, 14 Cal. Rptr. 2d 133, 841 P.2d 118.) A challenge to the amount of restitution to the victim is entirely collateral to the defendant's guilt or innocence. Moreover, the defendant's burden does not arise until the victim has made a prima facie showing of his or her claimed loss. Thus, there is no due process impediment to placing the burden of proving apportionment of fees between economic and noneconomic damages on the defendant.

Id. at 885-87, 135 Cal. Rptr. 2d at 474-75.

We find the reasoning in Fulton persuasive. This process will allow both a defendant and victim the opportunity to

litigate their interests while still maintaining the "fast track" contemplated by the Legislature.

### III.    Conclusion

The January 5, 2010 Judgment entered by the District Court of the Second Circuit, Wailuku Division is affirmed in part and vacated in part.    DeMello's conviction for Harassment is affirmed.    DeMello's sentence for Harassment is vacated.    The Order On Restitution Hearing is vacated.    The case is remanded for resentencing for the offense of Harassment and a new restitution hearing.

On the briefs:

Jennifer D.K. Ng,
Deputy Public Defender,
for Defendant-Appellant.


Artemio C. Baxa,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.