Dissenting opinion by
POLLACK, J.,
in which Circuit Judge PERKINS joins.
This case requires us to determine whether the Hawai'i restitution statute provides for recovery of lost wages as restitution. In holding that it does, the majority purports to rely on the “plain language” of the statute. I disagree that the statute unambiguously provides for the recovery of lost wages as a category of restitution. When viewing the words of the restitution statute in the context that they are used, it is apparent that the legislature intended to limit the types of financial injuries that are compensable under the statute. Because it is not clear on the face of the statute whether or not lost wages are recoverable, it is necessary to look to legislative history and other tools of statutory construction in fulfilling the court’s duty “to ascertain and give effect to the intention of the legislature.” Gillan v. Gov’t Emps. Ins. Co., 119 Hawai'i 109, 115, 194 P.3d 1071, 1077 (2008) (quoting Colony Surf, Ltd., 116 Hawai'i at 616, 174 P.3d at 366).
The legislative history of the restitution statute includes specific and reliable evidence that the legislature intended to exclude wage loss from recovery under the statute. In addition, application of the rule of lenity and other doctrines of statutory construction demonstrate that the statute does not provide for compensation of lost wages.
The consequence of the majority’s holding goes far beyond simply including lost wages within the limited categories of restitution recoverable under the statute. The majority’s decision rests on an analysis that essentially finds that there are no limitations to the categories of restitution that are compen-sable under Hawaii’s restitution statute.[1] Thus, the majority’s decision broadens the statute’s coverage well beyond its understood application by courts and practitioners for nearly twenty years and in a manner that is manifestly contrary to the legislature’s intent. For these reasons, I dissent.
*202 I. Background
On May 10, 2008, the complaining witness, Carleen Kelekoma was injured as a result of an altercation -with Lawrence DeMello, Jr. DeMello was charged with one count of the petty misdemeanor offense of harassment, Hawaii Revised Statutes (HRS) § 711-1106(1)(a) (Supp.1996) and one count of trespass, HRS § 708-815(1) (1993), a violation.[2] The District Court of the Second Circuit (district court) found DeMello guilty of both charges following a bench trial.[3]
The district court held two separate restitution hearings. Kelekoma did not receive wages as an employee because she was a hair dresser at a local hair salon working as an independent contractor. At the first hearing, Kelekoma testified that as a result of the altercation, she was unable to work for nine days, for which she requested restitution of $1,155.12 in lost wages, among other requests.
To calculate the lost wages request, it appears that Kelekoma was directed to use the appointments listed in her appointment book for the days she was unable to work. Three pages from the appointment book were submitted into evidence. Kelekoma provided an estimated client charge for each missed appointment and added general excise tax (GET) of 4.166%, totaling to $1,155.12. Kele-koma testified that she rented a chair from the salon owner, bought her own inventory, paid her own business expenses, and regularly paid general excise taxes and income taxes to the state. The State did not submit any evidence as to Kelekoma’s chair rent, inventory, or other business costs.
DeMello argued against an award of restitution for lost wages maintaining that lost wages “is not applicable to the restitution statute.” He argued that the legislature did not intend to include wage loss as a covered category, noting that the legislative history indicates that “wage loss was ‘more appropriate’ for the civil arena.”
The district court disagreed and filed a restitution order requiring DeMello to pay $1,155 for “loss of gross receipts” without providing any findings applicable to the loss.
DeMello appealed the district court judgment of conviction to the Intermediate Court of Appeals (ICA) on the grounds, inter alia, that restitution for lost wages was not allowed by law.[4] The ICA agreed, noting that the legislature specifically excluded lost wages when originally enacting the bill and “although this statute has been amended many times since 1998, the Legislature has not seen fit to include lost wages.” State v. DeMello, 130 Hawai'i 332, 341, 310 P.3d 1033, 1042 (App.2013). The ICA concluded “that lost wages are not compensable as restitution.” Id. Accordingly, the ICA vacated the restitution order and remanded for a new restitution hearing. Id. at 345, 310 P.3d at 1046.[5]
*203 The State’s Application for Writ of Certio-rari to this court challenged the ICA’s ruling that lost wages were not compensable under the Hawai'i restitution statute.
II. Discussion
Our primary duty in interpreting and applying statutes is “to ascertain and give effect to the intention of the legislature.” Gillan, 119 Hawai'i at 115, 194 P.3d at 1077 (2008) (quoting Colony Surf, Ltd. v. Dir. of Dep’t of Planning & Permitting, 116 Hawai'i 510, 516, 174 P.3d 349, 355 (2007)).[6] In ascertaining the meaning of a statute, we begin with the language of the statute itself. State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011).
Where the statutory language is plain and unambiguous, the court may fulfill its duty by giving effect to its plain and obvious meaning. See id. “The text’s plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.” United States v. Gayle, 342 F.3d 89, 92 (2d Cir.2004) (quoting Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir.2003)); see Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Stated in another way, the words of a statute are given meaning by the context in which they are used, and statutory language may only be construed in a manner consistent with its purpose. See Brown & Williamson Tobacco Corp., 529 U.S. at 133, 120 S.Ct. 1291; see also Yates v. United States, — U.S. —, 135 S.Ct. 1074, 1081-82, 191 L.Ed.2d 64 (2015) (“[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.” (second and third alteration in original) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).
Accordingly, when interpreting a statute, “[w]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.” State v. Toyomura, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995) (alteration in original) (quoting Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 335, 843 P.2d 668, 671 (1993)). ‘When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists,” this court looks to the context and other aids of construction to assist in ascertaining the true meaning of any ambiguity in the statute. See Silver, 125 Hawai'i at 4, 249 P.3d at 1144.
A. Language of HRS § 706-646 Does Not Unambiguously Provide for Recovery of Lost Wages in Restitution.
HRS § 706-646 (Supp.2006)[7] provides for victim restitution for “losses” suffered by the victim as a result of the defendant’s offense. The statute is divided into four subsections. *204 The first subsection defines what “victim” means as used in the statute. The second subsection specifies that a court “shall” order restitution for “reasonable and verifiable losses” in addition to explaining the priority of payment of restitution over the payment of fees. The third subsection specifies that the court may not consider the defendant’s “financial ability to make restitution,” and it specifies that “the dollar amount” of restitution must be “sufficient to reimburse any victim fully for losses.” This subsection also includes an exemplary list of what “losses,” as used in the statute, includes. Finally, the fourth subsection explains the effect of compensation under the restitution statute on any compensation awarded by the Crime Victim Compensation Commission, which awards compensation for multiple categories of restitution.
As stated, subsection (2) requires courts to order restitution for “reasonable and verified losses suffered by the victim or victims as a result of the defendant’s offense when requested by the victim.” “Restitution” and “losses” are not expressly defined in the statute, and subsection (2) does not include any reference to lost wages, income, or profits. Although subsection (2) requires that the losses be “reasonable and verified,” caused by the victim’s conduct, and requested by the victim, there is otherwise no limitation on the undefined term “losses” in subsection (2). Subsection (2) of course may not be read in isolation without reference to other subsections in the statute. Brown & Williamson Tobacco Corp., 529 U.S. at 133, 120 S.Ct. 1291 (“It is a ‘fundamental canon of statutory construction that the words of a statute must be read in them context and with a view to their place in the overall statutory scheme.’ ” (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). Accordingly, subsection (3), which defines “losses,” must be considered in reference to subsection (2).
Subsection (3) provides direction and limitation to the court in ordering restitution. The court may not consider the defendant’s financial circumstances in determining the amount of restitution although it may consider the defendant’s financial ability in establishing the time and manner of payment. Accordingly, the court must order an amount of restitution that is sufficient to reimburse the victim fully for his or her losses. Although there is no definition of “losses” in the statute, subsection (3) provides an exemplary list of the categories of expenses that are recoverable under the restitution statute:
Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:
(a) Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
(b) Medical expenses; and
(c) Funeral and burial expenses incurred as a result of the crime.
HRS § 706-646(3) (emphases added). Thus, subsection (3) gives context to the term “losses” in specifying property damage, medical expenses, and funeral and burial expenses as “losses” under the restitution statute. There is no reference to lost wages, income, or profits as recoverable categories of restitution under the statute, and thus, the statute is silent as to whether “lost wages” or “lost income” is recoverable under the statute. The inclusion of a non-exhaustive, exemplary list indicates that the legislature intended to include some parameters to the term “losses” as used in the statute. See Lealaimatafao v. Woodward-Clyde Consultants, 75 Haw. 544, 556, 867 P.2d 220, 226 (1994) (“By using the term ‘including,’ the legislature intended the enumerated claims to be exemplary of the type of claims which may be brought ....”).
Although the language of the statute is unclear as to whether lost wages are included in the classes of injuries covered by the restitution statute, the majority determines that “the plain language of appears to require restitution for lost wages” because “subsection 2 contains no language that would exclude lost wages.” Majority at 196, 361 P.3d at 423. However, it is indeed an odd requirement to place on the legislature that it must expressly exclude every category of expenses it does not want to be compensable *205 under the restitution statute when providing an exemplary list.
The majority reasons that “an award that did not compensate a victim for lost wages would not fulfill the court’s mandatory duty to order restitution for ‘losses’ in appropriate circumstances.” Majority at 196, 361 P.3d at 423. Thus, the majority’s plain language interpretation of the statute appears to be based on a reading of subsection (2) in isolation of other subsections of the statute and the legislature’s apparent failure to expressly exclude lost wages from restitution. However, the court’s textual analysis should not end with the words of subsection (2) because the text’s plain meaning must be understood by looking “to the statutory scheme as a whole and placing the particular provision within the context of the statute.” See Gayle, 342 F.3d at 92-93; see also Brown & Williamson Tobacco Corp., 529 U.S. at 132, 120 S.Ct. 1291 (“The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.”).
Although the majority’s “plain language” analysis seems to be entirely based on subsection (2)’s lack of language expressly excluding lost wages, the majority does reason that its interpretation of subsection (2) “operates in harmony” with subsection (3). With regard to subsection (3)’s requirement that the dollar value of restitution be sufficient to reimburse a victim “fully,” the majority concludes that the “plain language” of this “prefatory clause also appears to require restitution for lost wages.” See majority at 196, 361 P.3d at 423. The majority’s analysis thus must find that
“restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses”
plainly and unambiguously means,
“[a]n award that did not include reasonable verified income lost as a result of the defendant’s unlawful conduct would not reimburse a victim fully for losses.”
See majority at 196, 361 P.3d at 423. This purported “plain meaning” interpretation of the prefatory clause of subsection (3) cannot rest on the plain language doctrine, which applies where the meaning of the statute is “plain and obvious.” Silver, 125 Hawai'i at 4, 249 P.3d at 1144. When read in isolation, as the majority reads it, the prefatory clause is silent with regard to whether or not the statute provides for restitution for lost wages. This is true even when adopting the majority’s understanding of the term “fully.”
Although the majority does not explain its definition for the word “fully,” it appears that the majority interprets the word “fully” as plainly and unambiguously requiring the court to order restitution for all categories of possible losses caused by the defendant’s offense, provided the amount can be verified.[8] However, the majority’s interpretation of the word “fully” is contrary to the plain and understood meaning of the term. “Fully reimburse” or “full reimbursement” is a “known and usual signification,” that indicates that full reimbursement, rather than partial reimbursement, is required. See HRS § 1-14 (“The words of a law are generally to be understood in their most known and usual signification.”). Given its understood meaning, the term “fully” as used in HRS § 706-646(3) indicates that a court is required to order full reimbursement for the amount of the covered loss rather than a partial reimbursement.
The majority’s interpretation insists on an unnatural use of “fully” to expand the com-pensable categories of restitution. If “fully” indicates that the categories of losses for which compensation may be ordered encompass all “verifiable pecuniary losses” including lost income, then the enumerated list in subsection (3) would be superfluous, which is contrary to basic rules of statutory construction. See Camara v. Agsalud, 67 Haw. 212, 215-16, 685 P.2d 794, 797 (1984) (“It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignifi *206 cant if a construction can be legitimately found which will give force to and preserve all the words of the statute.”).
Therefore, the statute does not unambiguously provide for restitution for lost wages, income, or profits, which are not specified in the statute. This is particularly clear when viewing subsection (2) and subsection (3) together. Because the language of the restitution law itself leaves uncertainty and doubt as to whether the legislature intended to provide for lost wages, income, or profits, the court must look to interpretive aids such as legislative history and other rules of statutory construction. See Silver, 125 Hawai'i at 4, 249 P.3d at 1144.[9]
B. The Legislature Specifically Excluded Recovery for Lost Wages under the Restitution Statute.
Where the legislature’s intent is not clear from the face of the statute, as is the case here, legislative history may provide the court with guidance in interpreting the law. Id. The legislative history of HRS § 706-646 demonstrates the legislature’s specific exclusion of lost wages as a category of restitution. Thus, the legislative history lends further support to the interpretation HRS § 706-646 that has been applied by Hawaii courts for nearly twenty years.
The legislative history provides invaluable insight into the statute’s apparent silence regarding lost wages and income. Additionally, this history helps to define the legislature’s limitation of the categories of restitution compensable under the statute. Although the existence of the limitation is demonstrated on the face of the statute without reference to its history or other aids of statutory construction, the parameters of this limitation are not plainly and unambiguously articulated in the statute. For these reasons, a fair reading of HRS § 706-646 “demands a fair understanding of the legislative plan.” See King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2496, 192 L.Ed.2d 483 (2015).
Assigning the statute’s ambiguous language a “plain meaning” without reference to the legislative history in this case would not only be an abuse of the plain meaning doctrine, but it would also be contrary to this court’s duty to “ascertain and give effect to the intention of the legislature.” State v. McKnight, 131 Hawai'i 379, 388, 319 P.3d 298, 307 (2013). Accordingly, the remainder of this section discusses the legislative history underlying the enactment of HRS § 706-646 and subsequent amendments.
i. The 1998 Legislature Specifically Excluded Lost Wages from the Categories of Restitution Compensable under HRS § 706-646
Hawaii’s restitution statute was proposed in 1998 as House Bill 2776 (H.B. 2776) during the Nineteenth Legislature of the State of Hawai'i. H.B. 2776, 19th Leg., Reg. Sess. (1998). A section of H.B. 2776 provided for restitution orders to be enforceable as civil judgments. Prior to the enactment of HRS § 706-646, courts had discretion to sentence a convicted defendant to make restitution in an amount the defendant could pay, but such orders for restitution were not enforceable as civil judgments. See HRS § 706-605 (1993 and Supp.1995).
H.B. 2776, as originally introduced, proposed language for subsection (3) that is almost identical to what is currently the last sentence of subsection (3) of HRS § 706-646 except for one very significant difference; it included “[w]age loss incurred by the victim” and the “[c]ost of therapeutic treatment” in the exemplary list of compensable categories of restitution along with the other examples of losses that are currently provided for— “value of stolen or damaged property,” “[mjedical expenses,” and “burial expenses.” H.B. 2776 § 1. Additionally, H.B. 2766 also proposed an amendment to existing law to *207 make restitution mandatory regardless of the defendant’s ability to pay. H.B. 2776 § 4.
The House of Representative’s Committee on Judiciary considered testimony regarding the initially proposed H.B. 2776, and in a committee report, it supported one of the primary purposes of the bill—enforcement of restitution orders as civil judgments. H. Stan. Comm. Rep. No. 693-98, in 1998 House Journal, at 1306. However, the House’s Committee on Judiciary also raised objections to the bill including the bill’s allowance of restitution for wage loss and therapy and the requirement that the court order restitution in all cases. Id. The committee report expressed concern that allowing restitution for therapy and wage loss would be impractical:
[Ajllowing restitution for therapy and wage loss presents difficulty because these costs are often immeasurable. While the value of stolen or damaged property, medical expenses, and funeral and burial expenses can be determined with specificity, costs of therapy, which can last for months or years after the defendant is sentenced, are not. Also, wage loss may be measurable if the victim has an occupation at the time of the offense, but it becomes difficult to determine if the victim is unemployed at the time. Your Committee finds that this remedy is more appropriate for the civil arena.
Id. Thus, the House Committee determined that lost wages “present[ ] difficulty” and are “often immeasurable.” Id. To demonstrate that lost wages cannot “be determined with specificity,” the report contrasted lost wages to the three types of expenses, concluding that this remedy is more appropriate for the civil arena.[10] Id. The committee report further states, “Accordingly, your Committee has amended this bill by ... “[n]ot allowing for reimbursement of wage loss incurred by the victim and cost of therapeutic treatment required by the victim to recover from the psychological and emotional effects of the offense in the restitution order.” Id.
In order to “[n]ot allow[] for reimbursement of wage loss” under the restitution statute, the House Judiciary Committee revised House Bill 2776 by deleting “[w]age loss” and the “[e]ost of therapeutic treatment” from subsection (3)’s exemplary list. See H.B. 2776, H.D. 1, 19th Leg., Reg. Sess. (1998). The House Judiciary Committee also made the ordering of restitution discretionary rather than mandatory, allowing for courts to take into account the defendant’s ability to pay. See H.B. 2776, H.D. 1, 19th Leg., Reg. Sess. (1998).[11] These revisions were included in the final enactment of the law, and the exemplary list of subsection (3) remains the same today.
The majority observes that, despite the House Judiciary Committee’s strong objection to the provision of restitution for wage loss and the committee report’s statement that it amended the bill to “[n]ot allow[ ] for reimbursement of wage loss,” the bill was not amended “to expressly provide that lost wages were not recoverable.” See majority at 198, 361 P.3d at 426. While it is true that the bill did not expressly exclude lost wages, the majority substantially downplays the significance of the legislative history and suggests that the legislature is required to expressly exclude lost wages in order to achieve its stated purpose of “[n]ot allowing for reimbursement of wage loss.” However, the statute’s apparent silence with regard to lost wages is precisely the reason why the legislative history is significant in this case. Further, it would be unreasonable to require *208 the legislature to expressly list every category of restitution it intended to exclude simply because it chose to use an exemplary list to define the scope of recoverable “losses.”[12] In effect, the majority relies on its same “plain meaning” analysis as a basis for ignoring relevant and reliable legislative history.[13]
The House Judiciary Committee’s version of H.B. 2776 unanimously passed second and third reading in the House and was transmitted to the Senate. 1998 House Journal, at 267, 356. The Senate’s Judiciary Committee and the Senate’s Ways and Means Committee held hearings regarding H.B. 2776 and made amendments to the bill. S. Stand. Comm. Rep. No. 3009, in 1998 Senate Journal, at 1224. The Senate Ways and Means Committee specifically considered the word “fully” in subsection (3), which provided that restitution would be “a dollar amount that is sufficient to reimburse any victim fully for losses.” Id. The Senate Ways and Means Committee was concerned that “Reimbursing the victim ‘fully’ for losses may be interpreted as having an unlimited practical application, and allows for many legitimate type of damages that may require a more extensive civil proceeding and may prove too encompassing for a criminal proceeding.” Id. Thus, the Senate Ways and Means Committee expressed a similar intent as the House Judiciary Committee—to limit the scope of categories of restitution compensable under the statute. Accordingly, the bill was amended by deleting the word “fully” in order to “clarify the legitimate types of damages when compensating a victim.” Id. The resulting draft of H.B. 2776 unanimously passed third reading in the Senate and was assigned to a conference committee. 1998 Senate Journal, at 424.
The conference committee made a few final amendments to H.B. 2776 before the bill was enacted into law. In a committee report, the committee explained that it reinserted the word “fully” to subsection (3) “so that restitution shall be a dollar amount sufficient to reimburse any victim fully for losses.” Conf. Comm. Rep. No. 89, in 1998 Senate Journal, at 780. Thus, the committee report offers no explanation for the reinsertion of the word other than repeating the language of the bill itself.
The majority points to the reinsertion of the word “fully” as evidence that both chambers intended “to not categorically exclude such losses as wage loss from the scope of HRS § 706-646.” Majority at 199, 361 P.3d at 426. This is not based on any affirmative statement by the conference committee, since the conference committee report did not express such an intent, but, rather, the majority reaches this conclusion “[i]n light of the purpose behind the House’s and Senate’s previous amendments.” See majority at 199, 361 P.3d at 426. Despite this unexplained assertion, the majority makes the exact mistaken interpretation of the term “fully” that the Senate Ways and Means Committee sought to avoid. S. Stand. Comm. Rep. No. 3009. The majority is unable to point to any piece of legislative history that specifically and affirmatively supports its assertion that the legislature intended to not exclude recovery for wage losses under HRS § 706-646. Rather, the majority relies on the meaning it has assigned to the word “fully” in dismissing the legislative history that contradicts its analysis.
In addition, there is no indication that the conference committee shared the majority’s understanding of “fully.” In fact, it is highly unlikely that the conference committee would have so dramatically expanded the scope of the categories of restitution without mentioning it in the committee report or without reinserting the original language of the bill that specifically provided for “wage loss in *209 curred by the victim”; this is particularly true given the specific concerns that the scope of recovery under H.B. 2776 should be limited.
In summary, the legislative history of HRS § 706-646 demonstrates the legislature’s intent to exclude wage loss as a recoverable category of restitution. The 1998 legislature specifically considered whether lost wages should be recoverable under the restitution statute and chose to exclude such recovery from the exemplary list of subsection (3). When the final version of a law omits terms included in an earlier draft, the omission is significant. See, e.g., Gikas v. Zolin, 6 Cal.4th 841, 25 Cal.Rptr.2d 500, 863 P.2d 745, 759 (1993) (“[A] statute cannot be interpreted to include what was specifically excluded in the drafting process.”); cf. Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 248, 47 P.3d 348, 363 (2002) (noting the significance of a specific amendment by the legislative body responsible for an ordinance).
In fact, the legislative history in this case goes beyond the specific exclusion of lost wages from the exemplary list of subsection (3). There is also an express statement in the House Judiciary Committee’s report that it struck “wage loss” from the exemplary list of subsection (3) in order to “[n]ot allow[ ] for reimbursement of wage loss incurred by the victim.” H. Stan. Comm. Rep. No. 693-98. The Senate Ways and Means Committee also expressed its concern that certain “type[s] of damages” may require “more extensive civil proceeding^] and may prove too encompassing for a criminal proceeding.” S. Stand. Comm. Rep. No. 3009. Thus, there was a common appreciation that there are certain categories of restitution that should not be covered by the statute and that would be “more appropriate for the civil arena.” H. Stan. Comm. Rep. No. 693-98. Indeed, there is no specific statement throughout the legislative record expressing an intent that the statute provide for restitution for lost wages. Not surprisingly given the inclusion of the exemplary list in subsection (3), there is also no specific indication that the legislature intended that the statute include all possible categories of restitution without limitation. In short, the legislative record, when taken as a whole, is fundamentally at odds with the majority’s understanding of the legislature’s intent.
Further, the legislative history demonstrates that the legislature intended the exemplary list of subsection (3) to serve as a partial definition of the scope of losses, and it also informs our understanding of the meaning of the phrase “including but not limited to” as used in subsection (3) of the statute. In light of the legislature’s specific intent to exclude the recovery of lost wages as stated in the House Judiciary Committee Report, the fact that the legislature chose to retain the “including but not limited to” language indicates that the legislature did not perceive this language to be contrary to its intent.
Although the legislature’s intent with regard to lost wages is not clearly and unambiguously stated in the statute, there is reliable and specific legislative history evidencing the legislature’s specific exclusion of recovery of lost wages under the restitution statute. Accordingly, the legislative history is fundamental in this case to fulfill the court’s duty to “ascertain and give effect to the intention of the legislature.” McKnight, 131 Hawai'i at 388, 319 P.3d at 307.
ii. Subsequent Amendments to HRS § 706-646 Did Not Expand the Categories of Restitution Compensable Under the Statute.
HRS § 706-646 has been amended four times since its enactment in 1998, and within the legislative history related to each subsequent amendment, there is no indication that the 1998 legislature’s exclusion of lost wages was debated or considered. In 2006, HRS § 706-646 was amended primarily to make the ordering of restitution by the court mandatory so as to require that the order of restitution not be based on the defendant’s ability to pay. 2006 Haw. Sess. Laws. Act 230, § 22, 996-1025, 1011.
Prior to the 2006 amendments, courts could not impose restitution without first determining that the offender could afford to pay the restitution amount. See Penal Code Review Committee, Final Report of the Committee to Conduct Comprehensive Review of *210 the Hawaii Penal Code, 27J (2006). The Penal Code Review Committee, which was responsible for proposing the 2006 amendments, identified the consideration of a defendant’s financial circumstances to be a barrier to the realization of the fundamental purpose of our restitution laws:
The restorative justice envisioned by the Legislature in enacting restitution laws has not been fully realized. Under current law, courts cannot impose restitution unless they determine that the offender can afford to pay it. This determination is difficult to make at sentencing because accurate information regarding the offender’s true financial status is often unavailable and the offender’s future earnings capacity is often unclear.
Id. Thus, the Penal Code Review Committee specifically identified a problem to be addressed by the 2006 amendments: the premising of a defendant’s obligation to pay restitution on his or her financial circumstances.[14] Id.
The Penal Code Review Committee, composed of a cross section of the criminal justice community, was appointed by Chief Justice Ronald T.Y. Moon in 2006 to carry out the mandate of the Hawaii Legislature to conduct a study of the entire Hawaii penal code and propose appropriate legislative amendments. Id. at 1. The Penal Code Review Committee proposed changes to Chapters 704, 706, 707, 708, 709, 710, 711, and 712; these proposed revisions were eventually introduced in the legislature for consideration as House Bill 3256 (H.B. 3266).
In a committee report regarding H.B. 3256, the House Judiciary Committee listed thirty-one separate items to describe what the bill did. The thirteenth item listed in the report is relevant for our purposes: “Specifically this bill: ... (13) Requires that when restitution is ordered, the amount ordered not be based on the defendant’s financial ability to make restitution but such ability may be considered in establishing time and manner of payment.” H. Stand. Comm. Rep. No. 665.06, in 2006 House Journal, at 1359— 60. There is no further discussion with regard to this topic in the House Judiciary’s committee report or throughout the remainder of the legislative history. See id.; S. Stand. Comm. Rep. No. 3215, in 2006 Senate Journal, at 1557; Conf. Comm. Rep. No. 94-06, in 2006 Senate Journal, at 1813.
The majority’s proposition that the 2006 amendments to HRS § 706-646 were “clear[ly]” intended to create a restitution system similar to the federal system in all respects is not supported by the Penal Code Review Committee report. See majority at 200-01, 361 P.3d at 427-28. The report states the following with regard to the federal restitution system:
Under current law, courts cannot impose restitution unless they determine that the offender can afford to pay it. This determination is difficult to make at sentencing because accurate information regarding the offender’s true financial status is often unavailable and the offender’s future earnings capacity is often unclear.
The proposed amendments would create a restitution system similar to the federal Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A-3664. Courts imposing restitution pursuant to the MVRA must order full restitution without consideration of the defendant’s economic circumstances, but they are directed to consider the defendant’s ability to pay in establishing a restitution payment schedule.
In United States v. Dubose, 146 F.3d 1141, 1142 (9th Cir.1998), the United States Court of Appeals for the Ninth Circuit held that the MVRA “is constitutional both facially and as applied” to the defendants, who were indigent. Specifically, the court held that mandatory imposition of full restitution does not violate: 1) the Eighth Amendment’s prohibition against excessive fines or cruel and unusual punishment; 2) the principle of equal protection under the Due Process Clause of the Fifth Amendment; or 3) the Seventh Amendment guarantee of trial by jury. The court eonclud- *211 ed that the MVRA meets the constitutional standard of nondiscrimination with regard to indigents because a defendant cannot be resentenced to increased imprisonment solely on the basis of an inability to pay restitution. Hawaii law provides similar safeguards. Section 706-644 provides that when a defendant defaults contumaciously in the payment of restitution, the court may order the defendant committed until the restitution is paid. If the defendant shows the default was not contumacious, the court cannot order the defendant committed and may allow additional time for the defendant to pay or may reduce the amount of each installment.
Penal Code Review Committee, at 27k (internal citations omitted) (emphases added). Accordingly, the Penal Code Review Committee proposed an amendment to make the restitution statute “similar” to the MVRA’s provision for the ordering of restitution “without consideration of the defendant’s economic circumstances.” Id, As discussed, the Penal Code Review Committee was concerned with a victim receiving only partial compensation for the restitution that he or she was entitled to-in other words, less than “full restitution” [15]—as a result of the defendant’s uncertain financial circumstances. At the same time, the Penal Code Review Committee was apparently concerned with the constitutionality of such a system and, thus, discussed the Dubose case, which upheld the MVRA’s provision for ordering restitution without eonsid-eration of the defendant’s ability to pay-provided the defendant could not be subject to increased imprisonment solely on the basis of an inability to pay restitution.
The majority’s citation and quotation of various provisions of the MVRA in support of its argument that the 2006 amendments require restitution for lost wages is particularly troubling. The majority appears to conclude that, because the Penal Code Review Committee report describes a similarity between its proposed change and the federal system, the 2006 amendments to the statute amended the Hawaii restitution statute to essentially mirror the federal restitution statute. Majority at 201, 361 P.3d at 428. The majority condones bypassing Hawaii law in favor of a federal statute that was in existence and provided for “income lost” at the time that the 1998 legislature specifically excluded wage loss from the categories of restitution available under HRS § 706-646. The effect of the majority’s analysis is to supplant our restitution statute with the federal system without any mention of this intent in H.B. 3266 and the legislative history accompanying the bill.[16]
It bears repeating that the majority’s reliance on the federal statute is premised on the Penal Code Review Committee’s report, which was clearly focused on the particular issue of providing for an amount of restitution without regard for the defendant’s finan *212 cial circumstances. Additionally, the only reference to federal law made in the report was in the context of a discussion regarding the constitutionality of a law that does not take into account the defendant’s financial circumstances. It seems exceedingly unlikely that the Penal Code Review Committee and the 2006 legislature would have adopted such a radical revision to our restitution statute without any mention of such intention in the bill’s purpose, committee reports related to the bill, or floor speeches during the approval process.
The 2006 amendments were directed at fixing a very specific problem—the providing of only partial restitution based on a defendant’s ability to pay. As such, the 2006 amendments made the ordering of restitution mandatory without regard for the defendant’s ability to pay, and courts were no longer able to order only partial restitution based on a defendant’s finances. That said, there was no expansion of the categories of restitution compensable under the statute, and there is no indication anywhere in the 2006 amendments, the Penal Code Review Committee’s report, or in the legislative history of H.B. 3266 that the purpose of the 2006 amendments was to expand the scope of compensation under the statute.
The 2006 legislature did not revise subsection (3)’s definitional limitation on “losses,” and there is no mention or indication in the legislative history that the legislature intended to expand the categories of restitution compensable under the statute to include lost wages. For that reason, the 2006 amendments have little, if any, relevance to the question at hand.
C. Subsection (3)’s Exemplary List Provides a Definitional Parameter for “Losses.”
As discussed, the exemplary list of losses in subsection (3) demonstrates the legislature’s intent to exclude lost wages from restitution under HRS § 706-646. This design, which is evident from the statute itself, is confirmed by the reliable and specific legislative history discussed in the previous section. An interpretation that the exemplary list of subsection (3) is meant to be definitional is also supported by the doctrine of nosdtur a sodis, “the meaning of a word is to be judged by the company it keeps.” State v. Aluli, 78 Hawai'i 317, 321, 893 P.2d 168, 172 (1995) (quoting State v. Deleon, 72 Haw. 241, 244, 813 P.2d 1382, 1384 (1991)). Nosdtur a sodis may be “freely translated as ‘words of a feather flock together.’ ” Id. (quoting Deleon, 72 Haw. at 244, 813 P.2d at 1384).
The phrase “including but not limited to” is understood to indicate a partial definition. See supra note 12. The term “including” “expresses ‘an enlargement and [has] the meaning of and or in addition to, or merely [specifies] a particular thing already included within the general words theretofore used,’ ” Lealaimatafao, 75 Haw. at 556, 867 P.2d at 226 (alterations in original) (quoting Black’s Law Dictionary 763 (6th ed. 1990)). This court interprets the word “including” to demonstrate that “the legislature intended the enumerated claims to be exemplary of the type” included in the statute. Id. Although the phrase does not imply exclusivity, it does provide a context for understanding the term that it seeks to define. Id. Thus, the application of the doctrine of nosdtur a sodis is appropriate in this case.
HRS § 706-646(3) lists the following: replacement or repair “cost” of stolen or damaged property, “medical expenses,” and “funeral and burial expenses.” HRS § 706-646(3) (emphases added). Thus, the types of financial injuries listed in subsection (3) are all “costs” or “expenses.” Under the doctrine of nosdtur a sodis, this suggests that the legislature intended to limit recovery under the statute to costs and expenses. Thus, it is pertinent to determine whether lost wages may be considered a cost or expense.
A cost is the “amount paid or charged for something; price or expenditure.” Black’s Law Dictionary 422 (10th ed. 2014) (emphasis added). Relatedly, “replacement cost” is the “cost of a substitute asset that is equivalent to an asset currently held.” Id. at 423. Similarly, an expense is “[a]n expenditure of money, time, labor, or resources to accomplish a result.” Id. at 698 (emphasis added). “Funeral expense” is specifically defined as an “expense necessarily and reasonably incurred in procuring the burial, cremation, or *213 other disposition of a corpse.” Id. Thus, costs and expenses are incurred or paid by the victim as a result of the defendant’s conduct.
In contrast, lost wages are awarded to compensate for lost earnings or lost earning capacity. Wage is “[p]ayment for labor or services” and includes “every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodgings, payments in kind, tips, and any similar advantage received from the employer.” Id. at 1811. “Lost wages” is defined as “[d]amages to compensate for past lost earnings or lost earning capacity calculated from the time of injury to trial.” Id. at 1812. Likewise, earnings are defined as “[rjevenue gained from labor or services, from the investment of capital, or from assets.” Id. at 585 (emphasis added). “Lost earnings” are defined as “[w]ages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died.” Id. at 621 (emphasis added). Thus, lost wages has to do with what a person could have earned, and it encompasses various forms of compensation that may be provided by an employer.
Accordingly, in applying noscitur a sociis, there is a “natural association of ideas” suggested by the three items enumerated under HRS § 706-646. Each is an expenditure incurred by the victim that would not have been incurred but for the criminal conduct of the defendant. This natural association contrasts sharply with lost wages, which are not expenses incurred and required to be paid but, instead, is income that is never received. It follows that the inclusion of only costs and expenses in HRS § 706-646 implies the exclusion of financial injuries that are not costs or expenses. Thus, it is not in accordance with the principle of noscitur a sociis and the categories exemplified in the “including” clause to read HRS § 706-646 to provide restitution for lost wages.
In contrast, the majority reads subsection (2) in isolation to find that there are no limitations on the categories of restitution. See majority at 196, 361 P.3d at 423. Thus, the majority’s analysis does not consider subsection (3)’s exemplary list as providing any definitional limit, at all, to the categories of restitution that are compensable under HRS § 706-646. See majority at 196, 361 P.3d at 423. While “[i]t is true that use of the word ‘include’ can signal that the list that follows is meant to be illustrative rather than exhaustive,” it does not follow that the list has no meaning with relationship to the term it clarifies. Samantar v. Yousuf, 560 U.S. 305, 317, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) (finding that “even if the list in § 1603(a) is merely illustrative, it still suggests that ‘foreign state’ does not encompass officials, because the types of defendants listed are all entities”). If the illustrative list contained in subsection (3) is not indicative of the categories of restitution available, then the legislature need not have bothered enacting a law with a list of exemplary items.[17]
D. Rule of Lenity Requires Interpretation of Ambiguous Language in Favor of the Accused.
Even assuming that the restitution statute is amenable to differing constructions, the rule of lenity requires that the statute be interpreted in favor of the defendant. It is well settled that where “a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity. Under the rule of lenity, the statute must be strictly construed against the government and in favor of the accused.” State v. Casugay-Badiang, 130 Hawai‘i 21, 32, 305 P.3d 437, 448 (2013) (quoting State v. Bayly, 118 Hawai'i 1, 15, 185 P.3d 186, 200 (2008)); see also Carter v. Welles-Bowen Realty, Inc., 736 F.3d 722, 729 (6th Cir.2013) (citing United States v. Wilt *214 berger, 5 Wheat. 76, 95, 5 L.Ed. 37 (1820)) (“The rule of lenity tells courts to interpret ambiguous criminal laws in favor of criminal defendants.”).[18] Indeed, the rule of lenity is one of the longest established rules of statutory construction; it was described by Chief Justice John Marshall as “not much less old than construction itself.” United States v. Wiltberger, 18 U.S. 76, 95, 5 Wheat. 76, 5 L.Ed. 37 (1820).
HRS § 706-646 is a penal statute and must be construed in favor of the defendant. Thus, in light of the mandatory, financial penalty prescribed by HRS § 706-646, the list of costs and expenses provided by HRS § 706-646(3) should not be construed to provide compensation for losses other than costs and expenses. See State v. Woodfall, 120 Hawai'i 387, 396, 206 P.3d 841, 850 (2009) (applying the rule of lenity to adopt a less expansive meaning of statutory language where a law was ambiguous and the legislative history did not provide sufficient guidance). Thus, the rule of lenity additionally instructs this court to find that wage loss is not compensable as a penalty for a criminal offense under HRS § 706-646.
E. In Pari Materia Analysis with HRS Chapter 351.
Laws in pari materia, or upon the same subject matter, should be construed with reference to one another. HRS § 1-16 (1993). Under the doctrine of pañ materia, “[w]hat is clear in one statute may be called in aid to explain what is doubtful in another.” Id. Here, the provisions of HRS Chapter 351 and HRS § 706-646 both involve laws enacted by the legislature to reimburse persons for losses resulting from criminal offenses. Accordingly, they may be construed with reference to one another to explain the different approaches taken by the legislature in enacting these laws.
HRS Chapter 351 establishes the Crime Victim Compensation Commission (CVCC), which may award compensation for a broad variety of losses.[19]
The commission may order the payment of compensation under this part for:
(1) Expenses actually and reasonably incurred during the period of the injury or death of the victim;
(2) Loss to the victim of earning power as a result of total or partial incapacity;
(3) Pecuniary loss to the dependents of the deceased victim;
(4) Pain and suffering to the victim;
(5) Any other pecuniary loss directly resulting from the injury or death of the victim that the commission determines to be reasonable and proper; and
(6) Expenses actually and reasonably incurred for mental health services in the case of a mass casualty incident.
HRS § 351-33(2) (2000) (emphases added). Therefore, a person may recover lost wages through an award from the CVCC under HRS Chapter 351. The CVCC has discretion to award compensation for a broad variety of losses, including pain and suffering and “[a]ny other pecuniary loss directly resulting from the injury or death of the victim that the commission determines to be reasonable and proper.” Id. (emphases added).
The CVCC is an agency attached to the Department of Public Safety whose sole mission is to award compensation. See HRS § 351-1 (1993). Candidates for an award fill *215 out an application, including a separate authorization and release if they are making a claim for lost wages. HRS § 351-13 (1996).[20] Although compensation may be awarded by an administrative review of the application, if the award amount is contested, the CVCC may provide a healing. HRS § 351-13 (1996). The CVCC has “the same powers of subpoena and compulsion of attendance of witnesses and production of documents and of examination of witnesses as a circuit court.” Id. Victims have the right to produce evidence and to cross-examine witnesses. HRS § 351-14 (1993).
The CVCC has discretion in more than the types of losses for which compensation may be awarded. For instance, the CVCC is directed to “consider the behavior of the victim” in setting the award amount. See HRS § 351-31. It may order that “any ... payment of compensation under this chapter ... be made on such terms as the commission deems appropriate.” HRS § 351-61 (1998). The CVCC may award only a portion of the compensation requested by the applicant depending upon the circumstances. Id. The CVCC is empowered to make awards “for the benefit of the victim,” “to any person responsible for the maintenance of the victim,” and “to or for the benefit of ... dependents of a deceased victim.” HRS § 351-31 (2000).
HRS Chapter 351 specifically identifies the misdemeanor and felony offenses for which compensation may be awarded by the CVCC. See HRS § 351-32 (1998).[21] All of the offenses involve assaultive conduct where a claim for lost wages would be most applicable.[22] See id. Additionally, compensation is awarded in the context of the entirety of HRS Chapter 351. The chapter provides thirty-seven sections in six parts, providing extensive direction and guidance for the commission. Further guidance is provided by Hawaii Administrative Rules (HAR) Chapter 605.[23] Thus, the compensation award *216 scheme under the CVCC is robust and well-defined, includes specific rule requirements, provides for a broad range of awards for losses, may cover the losses of more than the direct victim, and allows for appropriate discretion in determining compensation awards.
In contrast, the majority’s decision creates a mandatory provision for lost wages in the restitution statute where no reference to lost wages is present and no statutory provisions or rules exist to guide a court. Further, restitution under the majority’s scheme is required for all “reasonable and verified” losses; thus, the majority’s decision extends to all victims of all criminal convictions for unlimited categories of restitution. Majority at 196, 361 P.3d at 423 (defining the kinds of losses illustrated in subsection 3 as any “verified pecuniary losses”). The effect of the majority’s decision is a broad legal mandate without any guidance provided in the current law.[24]
It is evident that the 1998 legislature was aware of this parallel loss-recovery scheme because it provided that “[t]he court may order restitution to be paid to the [CVCC] in the event that the victim has been given an award for compensation under chapter 351.”[25] HRS § 706-646(2) (1998). That is, once the CVCC has performed its evaluation and made a compensation award, the loss has been determined to be reasonable and verifiable. In accordance with the intent of the 1998 legislature, the court shall order the defendant to make restitution to the CVCC, and pursuant to this statutory design, our criminal courts are not required to resolve intensive factual matters involved in wage loss restitution determinations.
In summary, the legislature knew that a robust and comprehensive scheme existed under HRS Chapter 351 to cover the range of offenses where lost wages would likely be present. The legislature was aware of the complicated factual considerations that may arise in a wage loss claim. See House Report at 1305-06, Senate Report at 1224. Therefore, the restitution statute enacted by the 1998 legislature authorized a court to order restitution based on expenses and costs incurred by the victim, in contrast to and in recognition of the existing CVCC authority to award compensation for a broad spectrum of losses—including lost wages—based upon its evaluation of the relevant circumstances and its established practices and procedures.
III. Conclusion
In viewing the language of HRS § 706-646 two things are immediately apparent. First, the legislature intended to limit the categories of restitution by including a partial definition in subsection (3), and second, it is not plainly and unambiguously clear whether or not wage loss is included. Thus, in order to understand the legislative intent of HRS § 706-646, in fulfillment of this court’s duty, it is necessary to refer to the legislative history and other aids of statutory construction. In this ease, there are very specific and reliable statements in the legislative history that the legislature intended to exclude recovery of wage loss under the restitution statute. Additionally, application of the rule of lenity and other aids of statutory construction require an interpretation that wage loss is not a category of restitution that may be recovered under HRS § 706-646. Accord *217 ingly, for the reasons discussed, I would affirm the judgment on appeal of the ICA.

. See majority at 196, 361 P.3d at 423 (stating that subsection (2) does not "limit the categories of restitution that are compensable”); majority at 196, 361 P.3d at 423 (suggesting that, because subsection (3) includes an "inclusive” rather than an "exhaustive” list, it is not meant to be a "definitional parameter” of "losses” as used in the statute).

. See HRS § 701-107(5).

. The Honorable Kelsey T. Kawano presided.

. DeMello also appealed on the following grounds: (1) there was insufficient evidence to convict him of harassment; (2) his sentence was illegal because the district court imposed the maximum thirty-day term of incarceration and ordered him to attend anger management classes for his harassment conviction; (3) the district court abused its discretion by ordering him to pay restitution because (a) the district court failed to apportion restitution for the victim's medical expenses based on the victim’s pre-exist-ing medical condition and because it was not clear that DeMello was the sole cause of the victim’s injuries, and (b) the evidence in the record did not support the amount of restitution DeMello was ordered to pay; and (4) the district court failed to enter findings of fact and conclusions of law regarding the manner of restitution payment and the amount that DeMello could reasonably afford to pay.

.The ICA found sufficient evidence to support the conviction, but the ICA agreed that the sentence was illegal for including both a thirty-day term of imprisonment as well as anger management classes for the harassment conviction. DeMello, 130 Hawai'i at 339-40, 310 P.3d at 1040-41. The ICA vacated the sentence and remanded for resentencing. Id. at 345, 310 P.3d at 1046. In regard to the restitution order, the ICA found that the district court did not err by concluding that DeMello was liable for Kelekoma’s compen-sable losses, id. at 341, 310 P.3d at 1042, but required on remand that the district court reconsider the proper apportionment of Kelekoma’s medical expenses that were due to a preexisting condition. The ICA also adopted a preponderance of the evidence standard in restitution hearings. Id. at 342-345, 310 P.3d at 1042-46.

. Accord, e.g., Kellberg v. Yuen, 131 Hawai'i 513, 527, 319 P.3d 432, 446 (2014); Paul v. Dep’t of Transp., 115 Hawai'i 416, 426, 168 P.3d 546, 556 (2007); Gray v. Admin. Dir. of the Court, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997); Nat’l Union Fire Ins. Co. v. Ferreira, 71 Haw. 341, 345, 790 P.2d 910, 913 (1990).

. HRS § 706-646 provides, in pertinent part;
(2) The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant’s offense when requested by the victim.
[[Image here]]
(3) In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment .... Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to;
(a) Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
(b) Medical expenses; and
(c) Funeral and burial expenses incurred as a result of the crime.
(4)The restitution ordered shall not affect the right of a victim to recover under section 351— 33 or in any manner provided by law; provided that any amount of restitution actually recovered by the victim under this section shall be deducted from any award under section 351-33.
HRS § 706—646(2)—(4) (emphases added).

. It is important to note that this case involves lost income, rather than lost "wages.” The complaining witness in this case is not an employee seeking restitution for wages but, rather, is an independent contractor asking for restitution for lost income. Thus, the majority’s opinion is not limited to lost wages and would apply to lost income, lost profits, and other financial injuries.

. Further, even if assuming a viable argument could be maintained that the statute plainly and unambiguously includes lost wages and income, "when another aid to construction is available to the court to assist in ascertaining the meaning of the statute, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination." McKnight, 131 Hawai'i at 388, 319 P.3d at 307. In this case, legislative history expressly indicating the intent of the legislature is available.

. Indeed, a calculation of lost wages must consider a host of complex and countervailing factors, such as sick leave, vacation time, worker's compensation, unemployment insurance, welfare, and other government and private income replacement programs and substitutions. See HAR § 23-605-12; see infra notes 23 and 24.

. In 2006, HRS § 706-646 was amended to make the ordering of restitution by the court mandatory and require that the order of restitution not be based on the defendant’s ability to pay. See infra Section II.B.ii. In 1998, in the early drafts of House Bill 2776, the provision for mandatory restitution did not alter the limitation on the categories of restitution of subsection (3). Compare H.B. 2776 §§ 1, 6, with H.B. 2776, H.D. 1, §§ 1, 4. Likewise, the legislative history indicates that the 1998 legislature considered a court's determination to award restitution separately from the categories of restitution that should be included in an award. See H. Stan. Comm. Rep. No. 693-98, at 1305.

. The phrase "including but not limited to” is used to indicate a partial definition. Legislative Reference Bureau, Hawaii Legislative Drafting Manual (10th ed. 2012).

. By extension, the majority accords little respect for the legislature's own statement of its understanding of its revision to H.B. 2776 because it undermines the "plain meaning” the majority assigns to the statute. The majority accepts the House Judiciary Committee’s "intent to limit the scope of compensable losses,” yet the majority dismisses it as not properly effectuated. See majority at 199, 361 P.3d at 426 ("Thus, the Senate Ways and Means Committee's amendment attempted to effectuate the House's intent to limit the scope of compensable losses contained in H.B. 2776.”).

. The question of whether to consider a defendant’s financial circumstances was also considered by the 1998 legislature as a separate issue from the scope of the categories compensable under the statute. See supra note 11.

. The majority seizes on the Penal Code Review Committee's statement that their proposed amendments "make it mandatory for the court to order a defendant to pay full restitution for reasonable and verified losses” as evidence that lost wages are compensable as restitution. See majority at 199-201, 361 P.3d at 426-28. However, the Penal Code Review Committee sought to address the issue of courts ordering only partial restitution based on the defendant's ability to pay the full amount of restitution authorized under the statute.
Before the 2006 amendments, a court may have determined that a victim qualified for $100 in restitution under HRS § 706-646; however, the court would have only ordered the defendant to pay the amount he or she could afford, e.g., the court might order payment of $20 even though the victim qualified for $100 under the statute. Under the 2006 amendments, the amount of the restitution the victim qualifies for does not change; the only difference is that the victim is now entitled to the full restitution of $100, and the court may no longer order partial restitution based on the defendant’s financial circumstances. In other words, the court must order "full restitution.” The court only considers the defendant’s ability to pay when it determines the “time and manner of payment in which restitution is to be paid.” HRS § 706-646(3).

. The federal system, which specifically lists the categories of compensation provided for under its systems, includes restitution for "child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.” 18 U.S.C. § 3663A. These, among other categories of compensation provided for under the federal statute, are apparently also now available in our courts in the same way that wage loss has been incorporated into our law from the federal statute.

. In addition, the majority asserts that “verified lost wages are similar in kind to the losses illustrated in subsection 3” but provides no support for this assertion other than two civil cases that provide no guidance for interpretation of Hawaii’s restitution statute. See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 321, 47 P.3d 1222, 1234 (2002) (discussing generally the broad range of compensatory damages available under tort law); State Farm Mutual Automobile Insurance Co. v. Dacanay, 87 Hawai'i 136, 138 n. 3, 952 P.2d 893, 895 n. 3 (App.1998) (describing the definition of general and special damages in tort actions).

. See also State v. Aiwohi, 109 Hawai'i 115, 129, 123 P.3d 1210, 1224 (2005) ("[T]his court has declared that a criminal statute 'must be strictly construed and that it cannot be extended beyond the plain meaning of the terms found therein.'" (quoting State v. Johnson, 50 Haw. 525, 526, 445 P.2d 36, 37 (1968)); State v. Ganal, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) ("[A]s a general rule, '[p]enal statutes are to be strictly construed.’ (second alteration in original) (quoting State v. Ortiz, 74 Haw. 343, 351, 845 P.2d 547, 552 (1993)); State v. Rackle, 55 Haw. 531, 534, 523 P.2d 299, 302 (1974) (stating that penal statutes "must be strictly construed”).

. HRS Chapter 351 refers to payment as both an "award” and as an "order,” but use of the word "award” is more prevalent. See HRS § 351-33 (entitled "Award of Compensation"). Conversely, HRS Chapter 706 does not use the word "award,” except in reference to Chapter 351. For clarity, this opinion will use the word “award” to refer to payments by the CVCC and "order” when referring to restitution to be paid by a defendant pursuant to an order of a court.

. See also Apply for Compensation, Crime Victim Compensation Committee (last visited October 28, 2015), http://dps.hawaii.gov/cvcc/apply-for-compensation.

. HRS § 351-32 lists the following covered offenses:
(1) Murder in the first degree (section 707-701);
(2) Murder in the second degree (section 707-701.5);
(3) Manslaughter (section 707-702);
(4) Negligent homicide in the first degree (section 707-702.5);
(5) Negligent homicide in the second degree (section 707-703);
(6) Negligent injury in the first degree (section 707-705);
(7) Negligent injury in the second degree (section 707-706);
(8) Assault in the first degree (section 707-710);
(9) Assault in the second degree (section 707-711);
(10) Assault in the third degree (section 707-712);
(11) Kidnapping (section 707-720);
(12) Sexual assault in the first degree (section 707-730);
(13) Sexual assault in the second degree (section 707-731);
(14) Sexual assault in the third degree (section 707-732);
(15) Sexual assault in the fourth degree (section 707-733);
(16) Abuse of family [or] household member (section 709-906); and
(17)Terrorism, as defined in tide 18 United States Code section 2331.

. As DeMello's convictions were for a petty misdemeanor and a violation, Kelekoma was not eligible for an award of compensation.

. For instance, HAR § 23-605-12 (2001) provides rules regarding “Loss of earnings”:
(a) An applicant may be awarded compensation for lost earnings provided they were employed on a full time, part time or intermittent basis, paid appropriate federal and state taxes and exhausted sick or administrative pay during the period of disability and have met one of the following criteria. In order to make a determination for lost earnings, the applicant must have:
(1) Been on an approved leave without pay and the employer has kept the position open or if the position has been filled it shall be vacated once the victim has been certified as able to work;
(2) Been called to work and would have worked, except for the crime-related disability;
(3) Been scheduled to begin work, signed an employment contract and fulfilled all the requirements of the position, but was unable to start because of the crime related disability;
(4) Filed income tax returns and there was taxable gross income as evidenced by IRS Form 1040 "Schedule C” for sole proprietors, IRS Form 1065 for partnerships or IRS Form 1120 for corporate officers; or
(5) Lost their job as the result of the crime.
(b) During the disability period, the applicant must have been under the care of a medical *216 or mental health service provider. The service provider must certify the nature and duration of disability. A disability retirement from any private, county, state or federal employer shall be considered as conclusive proof of disability.
(c) If a medical certificate is not submitted, the lost earnings will be administratively limited to four days.

. A calculation of lost wages may require consideration of factors such as sick leave, vacation time, worker's compensation, unemployment insurance, welfare, and other government and private income replacement programs and substitutions. See HAR § 23-605-12, see supra note 23. In this case, a court would have to determine whether Kelekoma incurred the same chair rent and business costs during the time she could not work. Presumably, Kelekoma would not have incurred her ordinary inventory costs, and an order of restitution based on gross receipts, instead of net income, would seemingly not represent her actual loss.

. In 2006, the legislature amended this provision to remove the court's discretion: "The court shall order restitution to be paid to the [CVCC] in the event that the victim has been given an award for compensation under chapter 351." See 2006 Haw. Sess. Laws Act 230.